**UNITED STATES of America ex rel. Charles MILORO, Relator,**

v.

**John T. DEEGAN, as Warden of Sing Sing Prison, State of New York, Respondent.**

**No. 68 Civil 736.**

United States District Court
S. D. New York.

May 28, 1968.

Henry B. Rothblatt, New York City, for relator.

Louis J. Lefkowitz, Atty. Gen., of State of New York, New York City, for respondent; Mortimer Sattler, Asst. Atty. Gen., of counsel.

## OPINION

WEINFELD, District Judge.

The petitioner is confined to Sing Sing Prison, Ossining, New York, pursuant to two separate judgments of conviction entered on January 11, 1962, upon his pleas of guilty, one for assault in the second degree, and the other for robbery in the third degree, in the Supreme Court, State of New York, Queens County. He was sentenced to concurrent terms of five to ten years on the robbery charge and two and a half to five years on the assault charge.

Petitioner seeks his release upon a federal writ of habeas corpus upon allegations that the pleas were coerced in violation of his constitutional rights under the Fifth and Fourteenth Amendments. The petitioner charges that the totality of events and circumstances attendant upon and which preceded the entry of the guilty pleas induced and coerced their entry. The allegations of coercive factors include: revocation of bail and remand of petitioner to jail shortly before entry of the pleas; placing him in the same detention quarters with three codefendants, who, together with their respective attorneys, pressured him to plead guilty because the prosecutor stated that unless all the defendants pled guilty to reduced charges that day, the case would be moved for trial on Monday of the following week, although the prosecutor knew that petitioner's trial counsel would then be unavailable because of another engagement; promises by the prosecutor that petitioner and his codefendants would receive light sentences to be served in the Elmira Reformatory, whereas he received a longer term and was committed to Sing Sing Prison; a promise that he would be continued on bail pending sentence in exchange for the guilty pleas; deprivation of his right to counsel of his choice because the latter was not present when the pleas were entered; petitioner's illness on the day the pleas were entered; his alleged beating by the police upon his arrest in February 1961 (three and a half months before the entry of the pleas); and his wife's pregnancy (the child was not born until four months after the entry of the pleas).

The petitioner, following his plea of guilty on June 9, 1961 to the two indictments, absconded and failed to appear for sentence on a scheduled adjourned date. He was apprehended and brought up for sentence on January 11, 1962. It then appeared that on December 15, 1961, a third indictment had been returned, charging him with armed robbery, committed prior to the two crimes to which he had pled guilty on June 9, 1961. Upon being afforded his right of allocution, petitioner's counsel moved that the recently returned indictment be consolidated with the two earlier indictments, and that the pleas of guilty thereto also include the new charge. The court denied this motion; petitioner's counsel then moved to withdraw the pleas of guilty entered on June 9, 1961, upon the ground that the prosecution was aware, when those pleas were entered, of the alleged crime charged against petitioner in the third indictment. The court also denied this motion and then imposed sentence. However, subsequently on January 29, 1962, the court, in the ex-

ercise of its discretion,[1] and "in a sense of fair play," granted the defendant's renewed motion and dismissed the third indictment. The People appealed dismissal of the third indictment and petitioner also appealed because of the denial of his motion to withdraw his pleas of guilty. Both orders were affirmed by the Appellate Division,[2] and by the Court of Appeals.[3] The Court of Appeals' affirmance was handed down on January 14, 1965. The petitioner had been enlarged on bail pending the determination of these appeals.

Thereafter, following his commitment in June 1965, petitioner moved in the state court for writ of error coram nobis to vacate the judgments of conviction based upon allegations which, in substance, parallel those advanced here to support the claim of a coerced plea. An extensive evidentiary hearing was held. Witnesses who testified included petitioner, the attorney who represented him when the pleas were entered, petitioner's father, the respective attorneys for several of petitioner's codefendants, the Assistant District Attorney who allegedly made the promises, and the Supreme Court Justice before whom the plea had been entered. The writ was denied on October 11, 1965. The denial was affirmed by the Appellate Division.[4]

[1] This court has studied the transcript of the coram nobis proceeding, the minutes of the pleas, of the sentence and the entire state record. This court finds that in accordance with the criteria of Townsend v. Sain,[5] and those enumerated in section 2254(d) of Title 28,[6] a full, fair and adequate evidentiary hearing was had with respect to petitioner's allegations, at which he was represented by counsel of his own choice; that all available witnesses whose testimony was relevant to his charges testified; that all material facts bearing upon the allegations of coercion and fraudulent conduct, as now advanced, were adequately developed. The court further finds that the factual conclusions of the state trial judge are fairly and fully supported by the record.

Upon the state hearing the Assistant District Attorney categorically denied he had made any promise to the defendants, their lawyers or to petitioner's father either as to a specific sentence or place of confinement. He denied that any promise had been made with respect to any third indictment.

Petitioner's own counsel, who represented him when the pleas of guilty were entered, testified that no statement was made as to any sentence; that he never told petitioner that any promise had been

---

1. N.Y.Code Crim.Proc. § 671:

   "COURT MAY ORDER INDICTMENT TO BE DISMISSED

   "The court may, either of its own motion, or upon the application of the district attorney, and in furtherance of justice, order an action, after indictment, to be dismissed. * * * "

2. People v. Miloro, 21 A.D.2d 855, 856, 252 N.Y.S.2d 286 (2d Dep't 1964).

3. People v. Miloro, 15 N.Y.2d 730, 256 N.Y.S.2d 941, 205 N.E.2d 205 (1965). The Court of Appeals stated:

   "In affirming, we do not hold that the acceptance of a plea of guilty to a specific indictment automatically and necessarily covers crimes predicated on previous conduct for which defendant has been or may be subsequently in-

dicted. Our determination here is only that, on this record, the trial court properly exercised its discretion in dismissing the indictment." Id. at 732, 256 N.Y.S.2d at 942, 205 N.E.2d at 206.

4. Also affirmed on appeal was the denial on June 28, 1966 of a second application for a writ of error coram nobis, also on the ground the plea was coerced. The writ was filed by petitioner pro se, but was joined in and argued by the attorney who represented him upon the prior application for a writ, and the record included the minutes of the prior coram nobis hearing.

5. 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

6. Added by Pub.L. 89–711, § 2(d), 80 Stat. 1105 (1966).

made as to any sentence; that his reference to the Assistant's statements that all defendants would be treated alike was to the plea or disposition, and not to the sentence. The testimony of counsel for the other defendants, fairly read, challenges petitioner's claim that any promise was made by the prosecutor either as to the sentence or the place of confinement. At the most, these attorneys, as they acknowledged, made assumptions or drew conclusions based upon their experience and the "sentence practices of the Court."[7] To the extent there was a conflict in testimony, if any, it centered about such assumptions and conclusions; in any event, its resolution was for the state trial judge, who had the benefit of demeanor testimony of the live witnesses who appeared before him.[8]

The petitioner expressly disavowed any claim that the court had made any promise as to sentence. The trial judge denied that the restoration of bail, which he had earlier revoked when he remanded the defendant because of information imparted to him with respect to some incident, was based upon any discussion or understanding with respect to the entry of a guilty plea. The judge testified that bail was restored on considerations related to illness in petitioner's family; he did not recall whether it was because the petitioner's wife was pregnant.

The record abundantly supports the finding by the state court judge that "no promise was made to the defendant by the Assistant District Attorney in charge of the case which induced the defendant to enter his plea of guilty."

The further claim that petitioner was deprived of his right to counsel of his choice is equally without support; the record is to the contrary. Maurice Edelbaum was petitioner's retained attorney. Sheldon Kronen was associated with Edelbaum. Kronen appeared for petitioner on several occasions prior to June 9 when the case was on the calendar, including the day of his arraignment upon the indictments, and represented him when he pleaded not guilty. The Assistant District Attorney swore that before June 9 he had discussed with Edelbaum a disposition based upon a plea of guilty to reduced charges of robbery in the third degree and assault in the second degree; similarly, he had discussed with other lawyers reduced pleas for their clients; that June 9 had been fixed for the dispositions, in the absence of which the case would be moved for trial on the following Monday. Kronen appeared on June 9 and upon the first call the petitioner acknowledged him as his attorney. The case was put over for a second call, among other purposes, to permit Kronen to communicate with Edelbaum relative to a possible disposition after the Assistant, in open court, stated the matter had been discussed with Edelbaum on two prior occasions.

Upon the coram nobis proceeding the Assistant District Attorney testified that between the first and second calendar calls Kronen spoke to Edelbaum by telephone from the courthouse, and the latter verified that petitioner would plead guilty to the charges.[9] Significantly, this testimony has not been challenged either by Edelbaum, Kronen or petitioner. Edelbaum was not called as a witness by petitioner, and it is not suggested that he had not discussed with his client the disposition of the case by the entry of the pleas to reduced charges. In any event, Kronen and petitioner conferred between the first and second calendar calls. Upon the second call, petitioner again acknowledged Kronen as his lawyer. The latter stated petitioner's desire to withdraw his previous pleas of not guilty and to plead guilty to the re-

---

7. Hearing transcript, SM 23–24; 44–45.

8. See United States ex rel. Rivera v. Follette, 395 F.2d 450, 2d Cir., May 16, 1968.

9. SM 137.

duced charges. Petitioner was then closely questioned by the court to assure the voluntariness of the pleas. He was asked: " * * * did you just hear your lawyer tell me you wish to withdraw your plea of not guilty and plead guilty to the crime of Robbery 3rd degree?" to which petitioner responded affirmatively, and in response to further specific questions acknowledged that the plea was not the result of any undue influence, compulsion, threats or promises made by the District Attorney, his own attorney, or any officer of the court. A similar and separate acknowledgment that Kronen was his lawyer was made with respect to the assault charge and the voluntariness of the guilty plea. At no time did petitioner, in any manner, suggest or even intimate that Kronen was not his lawyer; at no time did he object to Kronen's representation of him.

Under the circumstances presented by the record, it is clear that petitioner was not deprived of his counsel and was adequately represented by counsel accepted by him.

Petitioner's reliance upon other incidents to bolster his claim of a coerced plea hardly merits discussion or notice. As to the claim that his wife's pregnancy was a factor in inducing the plea, nothing more need be said than that the anticipated event was more than four months in the future. So, too, as to an alleged beating by the police at the time of the arrest, if in fact true, this was more than three months before the entry of the pleas.

The entire record abundantly supports the ultimate finding by the state court that the pleas entered on June 9, 1961 were the free and voluntary act of the petitioner. The record establishes the pleas were knowingly and understandingly entered by petitioner, were not induced by any promise, act or conduct on the part of the prosecution, or by any combination of events as asserted by petitioner.

The petition is dismissed.